IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROY L. M.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CV 25-126-M-KLD<br><br>ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

## I. Procedural Background

Plaintiff s previously filed an application for Title XVI benefits on June 21, 2010.[1] (Tr. 17). Plaintiff's first application was denied initially and on reconsideration, and by an ALJ after a hearing. (Tr. 17, 60-107, 111-125). The

[1] Citations to the certified administrative record filed by the Commissioner (Doc. 7) are designated as "Tr." and refer to the Bates-stamped page numbers assigned by the Social Security Administration rather than the page numbers assigned by the Court's electronic docketing system.

Appeals Council denied Plaintiff's request for review, and the ALJ's decision dated May 4, 2012, became the agency's final decision. (Tr. 17, 111-125).

Plaintiff filed a second application for Title XVI benefits on February 28, 2019 ("prior application"). (Tr. 130). On February 13, 2020, state agency physician Dr. Thomas Schofield found on initial review that Plaintiff had the capacity to perform light work with a number of exertional and postural limitations. (Tr. 141-42). Plaintiff's second application was denied and Plaintiff did not appeal. (Tr. 131-147).

Plaintiff protectively filed his current application for Title XVI benefits on January 12, 2022, alleging disability beginning on January 12, 2022. (Tr. 249-57). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Tr. 14-33, 34-59, 154-60, 161-66,). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated July 24, 2024, the agency's final decision for purposes of judicial review. (Tr. 1-6). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II. <u>Legal Standards</u>

### A. Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner*

*of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

**B. Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the

claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); *see also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). When evaluating the severity of a claimant's mental impairments at step two, the ALJ must consider four broad functional areas, known as the "paragraph B" criteria: (i) understanding, remembering, and applying information; (ii) interacting with others; (iii) concentrating, persisting, and maintaining pace; and (iv) adapting or managing

oneself.” 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(c)(3). The ALJ is required to rate the claimant’s degree of limitation in these areas using a five-point scale: none, mild, moderate, extreme, or extreme. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). If the claimant has no more than mild limitations in the “paragraph B” criteria and the evidence does not otherwise indicate there is more than a minimal limitation in the claimant’s ability to do basic work activities, the ALJ will generally find that the claimant’s mental impairments are not severe. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d)(1). By definition, a non-severe impairment is one that “does not significantly limit [the claimant’s] physical or mental ability to do basic work activities.” 20 C.F.R. §§ 404.1522, 416.922.

If the ALJ finds that the claimant does have one or more severe physical or mental impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant’s impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant’s impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant’s residual functional capacity. The claimant’s residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still

do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III. Discussion

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity after the January 12, 2022, application date. (Tr. 20). At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes

mellitus, borderline intellectual functioning, and post-traumatic stress disorder (PTSD). (Tr. 20).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment described in the Listing of Impairments 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 21).

The ALJ then found that Plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations: "never climb ladders, ropes, or scaffolds; occasional exposure to moving mechanical parts; occasional operating motor vehicle; occasional exposure to unprotected heights; and able to perform routine repetitive tasks." (Tr. 23).

At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 27). Proceeding to step five, the ALJ found that Plaintiff not disabled because there are jobs that exist in significant numbers in the numbers in the national economy that he can perform, including work as a cashier, marker, and routing clerk. (Tr. 28-29).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and raises two issues on appeal. First, Plaintiff argues the ALJ failed to properly evaluate the prior administrative medical findings of Dr. Schofield, who assessed Plaintiff's physical limitations on initial review of his prior application for benefits. Second, Plaintiff argues the ALJ failed to reconcile her paragraph B

findings of mild and moderate limitations with the mental limitations assessed in the RFC.

### A. Medical Opinion Evidence

The ALJ is required to consider all medical opinions and prior administrative medical findings and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). A medical opinion is defined as a "statement from a medical source about what [a claimant] can do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations" in the ability to perform the physical and mental demands of work. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The factors that the ALJ must consider when evaluating a medical opinion include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

In February 2020, Dr. Schofield conducted an initial review of Plaintiff's prior application for benefits. (Tr. 141-42). At that time, Dr. Schofield limited Plaintiff to light work that would require no more than occasional stooping, kneeling, crouching, crawling or stair climbing. (Tr. 141-42). Dr. Schofield further found that Plaintiff could stand and/or walk for no more than a total of two hours

during an eight-hour workday. (Tr. 141).

Plaintiff filed his current application for benefits in January 2022. Plaintiff's application was denied initially (Tr. 154) and in August 2022 Dr. Robert Pratt reviewed the record at the reconsideration level to assess Plaintiff's physical RFC. (Tr. 148-50). Dr. Pratt noted that Plaintiff had not attended a scheduled consultative examination to obtain a current severity assessment and was "adamant" about not participating in any consultative examinations. (Tr. 149-50). Dr. Pratt indicated that the RFC from the ALJ's decision on Plaintiff's prior application could not be adopted due to changed circumstances and found that because Plaintiff had not attended a consultative examination there was insufficient evidence to determine his current RFC. (Tr. 149-50).

In January 2023, following attempts to schedule a consultative examination, Dr. Schofield conducted a second review of Plaintiff's application at the reconsideration level. (Tr. 157). Dr. Schofield noted that Plaintiff had "established a pattern of failure to cooperate" with attempts to schedule a consultative examination and determined that the evidence was "insufficient to complete the needed medical and vocational assessments." (Tr. 157).

After the administrative hearing, which took place in February 2024, the ALJ arranged for Plaintiff to attend a consultative physical examination with Family Nurse Practitioner (FNP) Virginia Fikes on April 3, 2024. (Tr. 481-85).

FNP Fikes recorded a number of observations, including: tenderness to palpation of the thoracic and lumbar spine; no paraspinal muscle tenderness; pain with palpation of right and left upper trapezius muscle; some decreased lumbar flexion and extension; normal paraspinal muscle strength; decreased right and left lateral flexion; pain with lumbar flexion, extension, and rotation; tenderness over the right AC joint and subacromial bursa; normal range of motion in upper extremities and able to lift arms but verbalizes pain in shoulders, motor exam with 5/5 strength in upper extremities; 4/5 strength in lower extremities; sensation intact to light touch in extremities but decreased sensation to monofilament in bilateral lower extremities, greater on the right; and normal gait and heel-to-toe straight line walking. (Tr. 484-85).

FNP Fikes did not identify any specific functional limitations, however, and wrote in closing that although Plaintiff reported a history of uncontrolled diabetes, records reflected that he was noncompliant with medication and "[h]e should work on getting better control of diabetes as this is not a debilitating disorder." (Tr. 485). FNP Fikes recommended that Plaintiff "obtain x-rays of shoulders and lumbar spine since it has been quite a while." (Tr. 485). She confirmed that Plaintiff exhibited "pain and decreased range of motion in lumbar spine and pain bilateral shoulders" that he "reports may make it difficult for him to maintain employment." (Tr. 485).

The ALJ issued her decision in July 2024. (Tr. 17-29). Plaintiff argues the ALJ failed to properly evaluate the supportability and persuasiveness of Dr. Schofield's prior administrative findings from February 2020. The Commissioner counters, and the Court agrees, that the ALJ reasonably assessed Dr. Schofield's opinion and found his proposed limitations unpersuasive in light of later evidence. (Tr. 26).

The ALJ acknowledged that Dr. Schofield's prior findings were "somewhat supported" by evidence at the time showing that Plaintiff had neuropathic leg pain, cramping and numbness in his legs and toes, and hip pain. (Tr. 26, citing Tr. 142). However, the ALJ found that Dr. Schofield's opinion of Plaintiff's limitations was inconsistent with later evidence from the relevant period showing that Plaintiff's diabetic complications were not as severe as Dr. Schofield had indicated. (Tr. 26). The ALJ cited FNP Fikes' consultative examination report, noting that while Plaintiff had some decreased sensation to monofilament in the lower legs, he had 4/5 strength in the lower extremities, he had normal gait and ability to squat without assistance." (Tr. 26, citing Tr. 484, 85).

Additionally, as the ALJ discussed at step two in finding that Plaintiff did not have severe back impairment, FNP Fikes mentioned a history of lumbar degenerative disc disease but there was no corresponding imaging in the record to support this diagnosis. (Tr. 21, citing Tr. 483). And as the ALJ discussed during his

evaluation of Plaintiff's subjective symptom testimony—which the Plaintiff does not challenge—although FNP Fikes observed that Plaintiff had some decreased sensation in his bilateral lower extremities, there was no edema, normal range of motion, no joint crepitation, and 4/5 strength. (Tr. 25, citing Tr. 485). FNP Fikes described Plaintiff's lower extremity motor function as "tone normal, no atrophy, no abnormal movements noted" and found that he was able to stand and get on the exam table without difficulty, tandem walking was normal, and heel-to-toe straight line walking was normal. (Tr. 25, citing Tr. 485). *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (while an ALJ is required to discuss and evaluate evidence that supports his conclusions, he is not required to do so under any specific heading). The ALJ reasonably found based on FNP Fikes' examination report that Plaintiff's physical impairments were not as limiting as Dr. Schofield found when he performed the initial review of Plaintiff's prior application some four years earlier. (Tr. 26).

To the extent FNP Fikes indicated based on Plaintiff's reporting that his pain and decreased range of motion in the lumbar spine and should pain "may make it difficult for him to maintain employment" (Tr. 485), the ALJ reasonably found her opinion unpersuasive because it was vague and lacks specificity. *See* 20 C.F.R. §§ 404.1520(c)(3), 416.920b(c)(3) (an ALJ is not required to evaluate statements on issued reserved to the Commissioner, including statements about whether the claim

is or is not disabled or able to work).

Plaintiff argues the ALJ erred in evaluating Dr. Schofield's opinion because she failed to address the fact that he found Plaintiff would be able to stand and/or walk for no more than a total of two hours during an eight-hour workday. (Tr. 141). Although the ALJ did not directly address Dr. Schofield's standing and walking limitations, the ALJ clearly pointed to Plaintiff's normal gait during the more recent consultative examination. Moreover, as the Commissioner points out, the regulations contain a source-level articulation requirement, meaning that an ALJ need not address every limitation identified by a single source and may consider multiple opinions from one source together. 20 C.F.R. §§ 404.1520c(b)(1), 416 920c(b)(1). Thus, although the ALJ did not specifically articulate why he found Dr. Schofield's standing and walking limitation unpersuasive, the ALJ's analysis of Dr. Schofield's opinion was sufficient under the circumstances.

**B. Mental Impairments**

Plaintiff next argues the ALJ failed to reconcile paragraph B findings of mild and moderate limitations with the mental limitations assessed in the RFC. At step two, the ALJ found that Plaintiff's borderline intellectual functioning and PTSD were severe impairments. (Tr. 20). At step three, the ALJ assessed the paragraph B criteria and found that Plaintiff had mild limitations in interacting

with others and in adapting or managing oneself and moderate limitations in understanding, remembering, or applying information and in concentrating, persisting or maintaining pace. (Tr. 22). Plaintiff argues the ALJ did not adequately account for these mental limitations in the RFC.

The ALJ is required to assess a claimant's RFC based on "*all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original). In doing so, the ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5; *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Hutton v. Astrue,* 491 Fed. Appx 850, 850-51 (9th Cir. 2012) (unpublished) (although the ALJ found at step two that the claimant's PTSD was not severe because it caused only "mild" limitations in concentration, persistence, or pace, the ALJ was required to consider those mild mental limitations in the RFC analysis).

Following *Hutton*, district courts in the Ninth Circuit have generally held that while an ALJ is not necessarily required to incorporate paragraph B findings of mild mental limitations into the RFC, the ALJ must consider those limitations when formulating the RFC later in the sequential evaluation process. *See e.g. Tammy W. v. Comm'r of Soc. Sec.*, 787 F.Supp.3d 1175, 1183 (W.D. Wash. 2025) ("This [c]ourt and others have held that an ALJ is not required to impose any

restriction in the RFC based on a 'mild' mental limitation but does need to at least consider the issue" and provide an adequate explanation for not including the limitation in the RFC); *Kimberly A. v. Kijakazi*, 2022 WL 19203, at *6 (D. Or. Jan. 3, 2022) ("[A] finding that an individual has 'moderate' limitations in the paragraph B criteria domains does not require the ALJ to assess a specific degree of functional limitations in the RFC," but the ALJ must consider all relevant evidence and provide an adequate explanation for the mental limitations in the RFC) (citations omitted).

Some courts have held that a statement by the ALJ that the RFC reflects the degree of limitation found in the paragraph B mental function analysis is sufficient to satisfy the Social Security regulations. *See e.g. Wendy C. v. Comm'r of Soc. Sec.*, 2020 WL 3287286, at *6 (W.D. Wash. June 18, 2020) (collecting cases). But several other courts—including in this district—have held that such a boilerplate statement is not enough to demonstrate that the ALJ considered paragraph B findings when assessing the RFC. *Napier v. Comm'r of Soc. Sec.*, 2026 WL 821469, at *9 (D. Mont. Mar. 23, 2026). "[H]aving found the existence of an impairment that mildly limits a claimant in some way, the ALJ does have to show his work as to why that limitation has no bearing on the RFC." *Napier*, 2026 WL 8211469, at *9 (quoting *Diane v. Kijakazi*, 2023 WL 7301969, at *5 (C.D. Cal. Nov. 6, 2023)).

Here, the ALJ evaluated the paragraph B criteria at step three and found that Plaintiff had mild or moderate limitations in all four areas of mental functioning. (Tr. 22). At the end of the step three analysis, the ALJ correctly stated that the limitations identified using the paragraph B criteria are not a residual functional capacity assessment, and the mental residual functional capacity assessment used at steps 4 and 5 requires a more detailed assessment of the areas of mental functioning. (Tr. 23). The ALJ then made the boilerplate statement that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 23).

In addition to this boilerplate language, however, the ALJ considered Plaintiff's mental impairments again later in the sequential evaluation process when formulating the RFC. (Tr. 26-27). Before analyzing the medical opinions, the ALJ explained that "because of [borderline intellectual functioning] and PTSD and his impaired memory and concentration at his consultative exam, the claimant is limited to routine and repetitive tasks." (Tr. 26).

Turning to the mental opinion evidence, the ALJ addressed prior administrative findings by state psychologist Dr. Dean Gregg, who evaluated Plaintiff's mental impairments on review of Plaintiff's prior application in February 2020. (Tr. 138-40, 142-44). Dr. Gregg found that Plaintiff had severe impairments of depression, PTSD, and borderline IQ, and opined that Plaintiff was

capable of simple, repetitive work that did not have a high demand for social interaction. (Tr. 144).

The ALJ also considered a post-hearing psychological consultative examination conducted by Dr. Kristina Johnson on June 21, 2024. (Tr. 486-494). Dr. Johnson administered a mental status exam and IQ testing. (Tr. 486). She observed that Plaintiff may have been "feigning memory impairment," and in her clinical judgment, Plaintiff's "scores underestimate his abilities in that he may not have put forth his best effort." (Tr. 490). While she suspected that Plaintiff "may have been able to score higher than he did," she still maintained "that he has a lower than average IQ, at least partially as a result of his poor educational history." (Tr. 490). Dr. Johnson noted that Plaintiff "made easy eye contact throughout" their interactions, and diagnosed a mild intellectual disability, moderate persistent depressive disorder, and PTSD. (Doc. 492).

With respect to Plaintiff's ability to interact with others, the ALJ found Dr. Gregg's opinion that Plaintiff was capable of simple repetitive work "that did not have a high demand for social interaction" unpersuasive because it was inconsistent with Plaintiff's responses in his Function Report that he gets along well with others (Tr. 27, citing Tr. 297) and also inconsistent with Dr. Johnson's observation that Plaintiff maintained "easy eye contact" throughout the consultative examination (Tr. 27, citing Tr. 492). The ALJ thus explained, with

record support, why Plaintiff's mild limitations in interacting with others did not require any limitations in the RFC.

To account for Plaintiff's other mental limitations, the ALJ restricted Plaintiff to "routine and repetitive tasks." (Tr. 26). The ALJ did not include any other mental limitations in the RFC to account for Plaintiff's mild limitations in adapting or managing oneself or his moderate limitations in understanding, remembering, or applying information and in concentrating, persisting or maintaining pace.

Plaintiff argues the ALJ erred because she provided no explanation for omitting these paragraph B restrictions from the RFC. Plaintiff relies on *Lubin v. Comm'r of Soc. Sec.,* 507 F. App'x 709, 712 (9th Cir. 2013) (unpublished) (finding the ALJ erred in finding the claimant had moderate limitations in maintaining concentration, persistence or pace and "not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert"); *see also Brink v. Comm's Soc. Sec Admin*., 343 F. Appx. 211, 212 (9th Cir. 2009) (unpublished) (holding that a limitation to "simple, routine, and repetitive" tasks did not adequately account for moderate limitations with concentration, persistence, or pace). Plaintiff does not argue that the ALJ was necessarily required to include her moderate paragraph B findings in the RFC, but

rather that the ALJ adopted a limitation to "'routine and repetitive tasks' without some explanation." (Doc. 16 at 6).

But as required by the *Hutton* line of cases addressed above, the ALJ considered the medical opinion evidence, including Dr. Gregg's prior administrative findings Dr. Johnson's consultative examination report, when formulating the RFC. The ALJ cited Dr. Johnson's opinion that Plaintiff "exhibited borderline verbal comprehension, perceptual reasoning, and processing speed." (Tr. 27, citing Tr. 491-92). The ALJ reasonably translated these clinical findings into a restriction limiting Plaintiff to "routine and repetitive" work, and in doing so accounted for moderate paragraph B findings. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating the clinical findings into a succinct RFC."); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (an ALJ may account for a claimant's moderate limitations in concentration, persistence, and pace with a limitation in the RFC to simple, routine, and repetitive tasks, where that limitation is supported by the medical evidence); *Rebecca L. v. Berryhill*, 2019 WL 857561, at *5 (D. Or. Feb. 14, 2019) (the ALJ accounted for moderate limitations in understanding, remembering, or applying information with a limitation in the RFC to simple, routine, repetitive tasks).

The ALJ also considered Dr. Gregg's finding that Plaintiff was capable of "simple repetitive work" (Tr. 27, citing Tr. 144). Consistent with Dr. Gregg's opinion, the ALJ limited Plaintiff to "repetitive" work to account for his mental limitations. To the extent the ALJ erred by not also including a restriction to "simple" work, the ALJ's error was harmless. The vocational expert testified that an individual with Plaintiff's RFC could perform a number of representative jobs, including Cashier II (DOT 211.462-010), a light unskilled position with an SVP of 2, and Marker (DOT 209.587-034), a light unskilled position with an SVP of 2. (Tr. 57). The ALJ accepted the vocational expert's testimony and found at step five that Plaintiff was capable of performing the requirements of the cashier and marker positions. (Tr. 28-29).

"Unskilled work" is defined as "simple" in that it "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a) and 416.968(a). "[U]nskilled work corresponds to an SVP of 1-2." SSR 00-4p. The cashier and marker jobs identified by the ALJ have a reasoning level (SVP) of 2, consistent with simple work. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (simple routine tasks are consistent with reasoning level 2). Because the ALJ identified two occupations that an individual with a mental limitation to simple, routine, and repetitive work could perform, any

error in failing to specifically include a limitation to “simple” tasks in the RFC was harmless.

## IV. Conclusion

For the reasons discussed above, the Court finds the ALJ’s decision is supported by substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner’s decision is AFFIRMED.

DATED this 30th day of September, 2026.

Kathleen L. DeSoto
United States Magistrate Judge